We are asking that you vacate the decision of the Administrative Court of Judges because her findings are not supported by substantial evidence of record and because she did not apply proper legal standards in making her determination. In this case, Ms. Weiskopf undoubtedly suffered some severe chronic pain as well as migraine headaches. When you take a look at the ALJ's residual functional capacity assessment, you will see that there is no corresponding limitation for her headaches. These headaches are well described in the record as being very frequent, very severe, with photophobia causing a need to rest. Let's look at how the Administrative Court of Judges comes to the point where she assessed residual functional capacity that did not include that particular impairment. She first says that she assigns persuasive weight to the opinion of non-treating, non-examining physicians. That was error. We know that errors are a number of reasons. One, the doctors never examined Ms. Weiskopf. They did not review all of her records. And more importantly, the Commissioner conceded. In the brief at page 14, the Commissioner writes, quote, there was no doubt in this case that Ms. Weiskopf experienced some significant limitations stemming from her chronic pain and her headaches. So when a non-examining physician says there's no severe impairment and the Commissioner concedes there is a severe impairment, those non-examining physician opinions are not persuasive. Let's look at what happened in terms of the treatment record itself. Ms. Weiskopf has been treated by at least nine physicians during the period of time we're talking about. She has had treatment with three neurologists, two pain management specialists, one rheumatologist, and it appears that there have been some primary care physicians, although there was a name change. I'm trying to tell exactly the number of physicians there, as well as the number of So the treating physicians all opine that Ms. Weiskopf's chronic pain and her migraine headaches would cause her to need to rest during the day. They all opine that she could not sustain a competitive eight-hour work week. We're looking at the standard that the Administrative Law Judges that apply when weighing these opinions. I would suggest that these opinions are uncontradicted because there is no examining physician that disagrees. There is no treating physician that disagrees. There is no evidence of exaggeration or malingering, despite the number of doctors that have examined her. They all find that these symptoms correspond to her diagnoses. The only physicians that disagreed are those that did not review the records, did not examine her, and issued opinions that the Commissioner agrees is wrong. So I would suggest that we would apply a clear and convincing standard to the opinion of the treating physician. Is the case law to that effect? Is our case law clear? I mean, it seems to me that it's uncontradicted by any treating or examining physician. So is that sufficient to trigger the clear and convincing standard? If it is, we have to look at the opinions. In every Social Security case, there's going to be a conflicting opinion. When you put in an application and they issue a denial, it's because somebody somewhere said, this person's not disabled because it's not severe, it's not ill, it's called modest, they have a residual functional capacity for whatever. So the answer to your question is the existence of that opinion alone does not lessen the standard. And so you have to look, and the best case on this I would point you to is Lester B. Jader, where they talk about whether these, in Lester B. Jader, they talked about the testifying physician, which is usually entitled to more weight than a non-examining physician. But the testifying or treating? Testifying. Testifying, okay. Right, so in Lester B. Jader, what they said was, if you have a testifying physician, because he's never treated, they claim it, you have to cite an abundance of evidence. That's the term they use, abundance of evidence, in order to reject the opinion of the treating physician. So here, a non-treating, non-examining physician's opinion is entitled to less weight than a testifying physician's opinion. And based on an abundance of evidence standard, it's clear that we're looking at a clear and convincing standard in rejecting the opinion of the treating source. In any event, by the standard, there's no legal error here. If you take a look, the neurologist indicated that Ms. Weisskopf could not sustain a competitive eight-hour work piece, as did the pain management specialist. And the neurologist particularly noted that Ms. Weisskopf has very severe headaches. If we look at the treatment that she had, and most of it's going to be for the medications because there's not much else that you can do for her chronic pain, which does include fibromyalgia, which does include chronic fatigue syndrome, and it does include migraine headaches. She's had Cymbalta, Xanax, MS-contin, Fruva, Zoloft, Paxil, Emitrix, Fentanyl patches, Morphine, Lurigan, Neurontin, Amitrip, Fluenzavella, Raglan, Percocet, Trisandidine. She also had injections of Turidol. She's had 5-lateral L4-5 epidural steroid injections for her chronic lumbar pain. She's had injections of L2-3-4. She's had medial branch blobs for her back pain, and she's being prescribed Lidocaine patches as well as Morphine. And all of these records show that she has these very significant headaches that are causing her to rest and lie down during the day with the photophobia, the phonophobia. The administrative law judge doesn't address all that. She just says, I find that you can do a range of sedentary work. It's a blanket conclusion. There's no identification of which symptoms she's rejecting and why. Why does the administrative law judge find that her headaches, which are occurring at least three times a week, are not causing her to need to lie down, are not causing her to be off-disk 15% of the time? It's silent. The guidelines of Brown v. Hunter and Woodmark, that's legal evidence. We also have the issue with the claimant's testimony result. The administrative law judge says, well, because she can take care of personal needs or you can take care of your dog, I'm rejecting your testimony. And when the judge decided this case, credibility analysis was under 96-78. And that indicates that you would have to identify the limitation of rejecting and explain why. And here the administrative law judge just said, you're not fully credible. She didn't explain to us which testimony was rejected or why it was rejected. Now, after this decision, Social Security came out with SR-16-3P. While it supersedes it, it says we are explaining how these regulations are to be enforced and how we are to do credibility analysis. And they specifically state in 16-3P, it's not a credibility you're not credible because of. It's we are going to measure symptom testimony. It's exactly what the court held in Brown v. Hunter. And this is exactly what the administrative law judge did not do. What she said is, she's not fully credible, but she didn't tell us exactly why. Those activities that the judge cited can all be performed within the limitations testified to by Ms. Weisshoff. They can all be performed within the limitations testified to by the training doctor, both the neurologist and the pain management specialist, as well as the physician's assistant. With respect to the physician's assistant, yes, at the time this was decided, they were not an acceptable medical source, but their opinions are still entitled to wait, pursuant to SSR-06-3P. Those regulations have recently changed. They're now acceptable medical sources, but that does not apply to this case because the policy rule specifically states that it's only four claims filed on him after a certain date. If we put her at the end, would she have the benefit of that ruling? I don't believe she would. I think there is hope for her. But the fact that they changed that, it enhances 06-3P. It tells us exactly what the case was said. If you have a physician's assistant who gives us an opinion, we are going to weigh that, pursuant to 20 CFR section 1527C factors. We're going to look at consistency, length of treatment, knowledge of the record. Here, the physician's assistant had an entire record before him when he filled out the opinion form. He was very familiar with the treatment and what Ms. Weiskopf's condition was. You see, I'm running out of time. I'll reserve it and get out of class unless you have any questions. Thank you. Thank you. May it please the Court. My name is Richard Brody. I'm representing the Commission on Social Security in this matter. This is a case where Ms. Weiskopf is unquestionably in pain. The issue for the LG was not the existence of good pain. It was to what degree that pain caused functional limitations. Indeed, the LGA found that because of her pain, Ms. Weiskopf was significantly limited to only sedentary work, and restricted sedentary work in light of our views. I'm sorry, Ms. Weiskopf, I should have said that. So the opinions for treating the physician should have been weighed differently, and her symptomatic complaints should have been given more credit. Did the ALJ consider the evidence of fibromyalgia in connection with both ways of diagnosing fibromyalgia in SSR12-GP? Well, the ALJ clearly considered fibromyalgia because he discussed it in an op-ed. Well, the evaluating line of the second basis for determining fibromyalgia listed in the op-ed I'm bringing out to a ruling by the Diseases and Security Agency. The decision does not discuss that SSR in detail. The ALJ did not consider to find that fibromyalgia was a severe impairment. That finding was not challenged by the people. While the ALJ does mention that there were no charter points, that's the main focus of the SSR and fibromyalgia, which may explain why he found it was not a severe impairment. And those elements to see the existence of fibromyalgia, that's not to see if they are causing functional limitations. That is merely a find-out. If it is a medically determinable impairment, which is a threshold issue, then the ALJ instead defines if it's severe, and then determines if it causes functional limitations. So the mere existence of fibromyalgia does not dictate findings in the IRC that she is additionally functionally limited. And again, the ALJ found that Ms. Weisbaum was sick because he delimited her to a very small subset of the jobs, but that there are several jobs in the actual company that she could form. And while Ms. Weisbaum now is trying to make this a fibromyalgia case, I would note that the doctors being relied upon did not base their opinions on fibromyalgia. They based it on joint pain, and they were asked specifically on the form, but they based their opinion on the illness of fibromyalgia. And then migraines, too, right? It's a great job. Dr. Qureshi addressed it heavily. So was it a legitimate reason to discount, or not do it the right way to Dr. Qureshi's opinion, because he didn't require her to have a headache on? Well, that is one valid reason. I would point out that, as the ALJ pointed out, Dr. Qureshi's opinion isn't in contrast with the IRC. So I believe Ms. Weisbaum has stated that opinion. He found that she had moderate limitations, which did not preclude activity. He did not advise that she must lie down for the three hours, given that she has migraines. She has symptoms for three hours, and that lying down could help, but he also states that medication helps, and that medication is not causing side effects. So it's a misstatement to say that Dr. Qureshi's opinion is that she must lie down whenever she has migraines. Is it a correct assessment that his conclusion was that she had moderate restrictions of activities involving exposure to changes in temperature, humidity, driving, and exposure to dust, fumes, and gas, but that the degree of restriction was moderate? Correct. And by only applying as a jury restriction, it's arguable that it doesn't conflict with the ALJ's findings at all, to the extent that it did. The ALJ provided reasons, noting that there was no hitting clock, and the reasoning not to add on her statement, I understand. I mean, the idea that she needed to have a hitting clock, which would be subjective, is a bit odd to me, because you rejected the conclusion because it went based on her subjective symptoms or subjective reporting. There's no hitting clock would be as well. So explain that to me. Well, I believe it's why hitting clocks are used in the first place, that contemporaneous logs are inherently more reliable, I think, than a regulation of what happened weeks or maybe months later, that it may be subjective in all fields, contemporaneous reporting. But it's important for others to understand what's the basis for rejecting your subjective reporting. I believe the ALJ is simply noting that it would have been more reliable, and since he had already discounted Ms. Weisskopf's symptom reporting, that he found that Dr. Christian was relying simply on the reports from his three meetings that he had with Ms. Weisskopf, that that was not reliable enough, that a hitting clock would have been more reliable. And it's a common dosing tool. But again, he also points out that by fully limiting or only showing moderate limitations, it's not in conflict with the RFC. Can we visit briefly the fibromyalgia issue? Because it seemed to sort of circle the records but never kind of landed as a diagnosed disability. There's references to it in conjunction with other things, and it was my understanding that the disability finding was based on the chronic migraines, chronic pain that was subsequently more specifically described as her low back, and a leg pain that she was responding to in treatment, and depression and anxiety, which given the number of drugs she was on is not terribly surprising. And you said that that was not appealed, that the fibromyalgia issue is not part of the appeal. The fact that it was not considered a severe impairment in symptom two, which was a real decision, that was not challenging. Of course, the LJ's is also two severe and non-severe impairments or conditions. And as he's describing them, I'm going to certainly discuss this, so it looks like it's something he completely ignored. But it's also the fact that the doctors in this case, or at least the doctors that provided these four opinions, didn't face fibromyalgia. They were, as you stated, basically on lower back and some leg pain. Meanwhile, as my spouse states, that those are uncontradictory. Well, first, they are not dictated by state agency positions. I think that means that this is completely legitimate standard of lives. But as he did say that there were some nine treatment physicians, that's correct. And those physicians, simply because they did not fill out the form, they still had clinical findings, those clinical findings. So part of the ALJ's decision, they were in contrast to the opinions of physicians such as Dr. Sheldon and Dr. Simon and Dr. Gresham, to the extent that it was requiring more functional limitations. Dr. Eros, Dr. Gorman, Dr. Simkumar, Dr. Farrell, Dr. Fairfax, all provided clinical findings that showed, in many of them, full range of motion, full strength, normal gait, normal reflexes, normal sensation. And these are functional tests where they all were showing that she suffered pain, which is uncontradictory. And she didn't suffer any pain. She's on a whole array of drugs for this. Absolutely, Your Honor. And those drugs are a powerful one. I mean, it's not morphine. It's not a terminal drug to use to treat this seriously. Absolutely, Your Honor. But there's some failing reports in the record that those treatments were effective. So that's one of the reasons why the ALJ found she wasn't as limited as some of these opinions, because while she's on CBP medication, she's reporting that it's working. Well, Dr. Si's treatment notes indicated that it was morphine, surely, and her opinion is in that as well. And I had mentioned, though, there was functional clinical evaluation, even while she was, by Dr. Correction, while she was suffering pain, it might be that she really adapted and still was able to perform full range of motion, normal gain, full strength, normal reflexes. So while she's suffering pain and she rates 8 out of 10, it's simply not really a functional limitation. She didn't ask any questions before the ALJ. Well, frequency of attack was before the agency. And Dr. Correction apparently thought she was reported that she was having these attacks at some frequency. And that's where the heavy clock comes into play, because the ALJ rejected that finding based on the lack of a heavy clock. So, in other words, he was saying it was so incredible. I would note that Dr. Correction also had another visit. He wanted to attempt nerve blocking and further injections after his report. He had the record of 569 and reported that they were successive in both the frequency and scenario you were indicating. Further evidence that the ALJ's finding was active by this record. Are there any further questions? Well, I just say that fibromyalgia wasn't in there, but the ALJ did consider that. They also considered chronic vaginal joint pains, which were noted by the physician's physician, Schultz, I think. And is it true that vaginal joint pains is a symptom of fibromyalgia? Absolutely. But fibromyalgia is much more under this region as a specific condition. I see. You're saying that that wasn't before, but it specifically was in the form of the symptoms of chronic joint pain and back pain that's part of that disease, right? Okay. And any chronic pain or any joint pain could be part of that disease. My concern is that it wasn't addressed in any way. He addressed the tension point part, but he didn't address the second standard in that. Then, yes, it's fibromyalgia. You want me to answer? Yes, please. That's why you're seated. And, again, the physicians that are being relied on here didn't base their fibromyalgia. They based it on chronic back pain. So, obviously, it could be a symptom of. Right, so it's not a symptom to base a symptom. And as the doctor said, one of the major differences was that he said Ms. Westcoff could only sit for three hours and the ALG said six. And that would be a back pain issue, and there's imaging for back pain that only showed mild to moderate didgeridoo problems. And I might point out that Ms. Westcoff testified that she couldn't sit for a long amount of time because of her ALG. She did testify because of fibromyalgia or chronic pain. And she didn't make a complaint to doctors. And so there's certainly a discrepancy of how long she could sit and the ALG looked the entire record down with what he noted, what he did. Thank you, Johnson. Thank you, Rashford. We'll give you some answers for a moment. You have the time. Thank you, Your Honors. With respect to the fibromyalgia that is going on, and there are no neurologists in the record, the Administrative Law Judge did not label it as a severe impairment, but she found chronic pain to be as severe. And so we have to look at 20 CFR section 4.1523, which says an Administrative Law Judge must include in the residual functional capacity assessment the effects of all impairments, severe and non-severe. And so the Administrative Law Judge did not do that in this case. So I also want to touch on what Counselor said about falling into motion by doing reflex thoughts. You don't expect that with fibromyalgia, but you don't expect that with headaches either. If you have a migraine headache, you should not expect it to be limited in your ability to move your arm or lift your leg. It's a migraine headache. It causes you to need to rest and lie down. That's really all I have to say. Thank you, Counselor. Thank you. In case you'll be submitted for a decision.
judges: Thomas, Wardlaw, Bencivengo